**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States Postal Service,      :      Case No. 3:11-CV-1878

        Plaintiff,      :

   v.

                         :      **MAGISTRATE'S REPORT &
                                       RECOMMENDATION**

J. Leonard Spodek,      :

        Defendant.      :

## INTRODUCTION

Plaintiff's breach of contract claim was referred to the undersigned Magistrate Judge for general pre-trial supervision.  Pending are cross-Motions for Summary Judgment (Docket Nos. 22 & 23).  For the reasons that follow, the Magistrate recommends that the Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

## JURISDICTION

Under 39 U. S. C. § 409(a), the United States district court has original but not exclusive jurisdiction over all actions brought by or against the Postal Service.  In the instant case, Plaintiff seeks an order compelling Defendant to sell, transfer, and convey title to real property to the Postal

Service in accordance with a lease purchase option and directing Defendant to accept payment for conveyance of the property. This substantial question of federal law gives rise to federal jurisdiction.

### THE PARTIES.

Plaintiff is an independent establishment of the executive branch of the government of the United States which was created pursuant to the Postal Reorganization Act (Act), 39 U. S. C. § 201 (Docket No. 1, p. 3 of 8, § 6; *Dolan v. United States Postal Service,* 126 S. Ct. 1252, 1255 (2006)). Plaintiff is the lessee of the premises known as the Carey Ohio Post Office which is located at the intersection of the West North Street and North Vance Street in the Village of Carey, Wyandot, County, Ohio.

Defendant, a resident of Cedarhurst, New York, owns a large number of properties which he leases to USPS for use as post offices. Defendant is the lessor of the premises known as the Carey Ohio Post Office (Docket No. 1, p. 3 of 8, § 7).

### FACTUAL BACKGROUND

On August 8, 1961, Rex Huston and Vernon H. Huston, doing business as Huston Lumbar Company, along with their respective spouses, Marilyn J. Huston and Mary Bell Huston, entered into a traditional "Post Office Department" lease for premises located at the intersection of the West North Street and North Vance Street (the Carey, Ohio, Post Office), in Carey, Wyandot, County, Ohio for a term beginning on April 7, 1961 and ending on April 6, 1991. Under the terms of the lease, the Hustons were responsible for the maintenance of all meters, lighting, plumbing, heating system, air conditioning equipment, refrigerants and filters, replacement of all ballasts for fluorescent lighting fixtures and real estate taxes associated with the property. The Government was obligated to pay annual rent of $5,100 and monthly utility, heat and custodial service expenses. The

lease could be renewed, at the option of the Government, for the following annual rentals:

> 10 years at $5,100 per annum
> 5 years at $4,800 per annum
> 5 years at $4,800 per annum,

provided notice was given in writing at least ninety days before the end of the original term

or any renewal (Docket No. 1, Attachment 1 p. 1 of 9).

The Agreement to Lease Rider included an option to purchase the fee simple title to the

leased premises, including the underlying land, at the following respective times and prices:

> At the end of the basic 30-year term$50,000
> At the end of the 10-year renewal option term$40,000
> At the end of the first 5-year renewal option$40,000
> A the end of the second 5-year renewal option$35,000

all in accordance with any applicable federal statutes in effect now and hereafter while this

lease is in effect; provided, that the Government shall give the lessor notice of election to purchase

at least one year in advance of the respective times set out above (Docket No. 1, Attachment 1, p.

3-4 of 9).

Prior to February 15, 1990, the Huston Family conveyed the post office to the Huston Family

Trust and on September 10, 2005, the Huston Family Trust conveyed the post office to the Huston

Post Office Partnership.  On October 24, 2005, the Huston Post Office Partnership conveyed the post

office to Defendant (Docket No. 1, p. 3, § 7; Docket No. 22, Attachment 8, § 5).

David Hubert, President of Hubert Title Company, was retained by Plaintiff on March 19,

2010, to assist with the purchase and transfer of title for the Carey, Ohio Post Office (Docket No.

22, Attachment 10, § 2).

On April 2, 2010, Plaintiff's authorized contracting agent sent written correspondence to

Defendant which stated, *inter alia*,

This is Notice of Election to Purchase in accordance with Paragraph 16 of the Lease for the Carey Ohio post office dated August 28, 1961.  This notice of election is binding, and is effective immediately.  The actual closing of the purchase of this Carey post office property will occur when the current renewal term expires, which will be on April 6, 2011.

(Docket No. 22, Attachment 2, pp. 2 of 3).

On March 21, 2011, Mr. Hubert contacted Defendant by telephone and letter regarding Plaintiff's intention to proceed with the transaction. On March 28, 2011, Defendant's son and agent, requested that the closing be conducted by mail and requested draft documents for the closing. Mr. Hubert complied with this request. Defendant notified Plaintiff by electronic mail that there was an error in the deed. On April 1, 2011, Jonathon Stein, Defendant's attorney discussed the error in the deed and suggested revisions to the draft deed. Mr. Hubert made the suggested changes to the deed, and on April 5, 2005, the corrected closing documents and a check for the purchase price and pro-rated rent for the first six days in April, 2011, were forwarded to Mr. Stein. On April 7, 2011, Mr. Stein returned the closing package with a cover letter stating that he had not been retained to close the matter. On May 6, 2011, Mr. Hubert mailed to Defendant the closing documents, a check for $35,079.98 and a check for $723.28 which represented the rent through May 31, 2011 (Docket No. 22, Attachment 7, §s 2, 5, 7, 8, 9, 10, 11 & 12; Attachment 8, § 7).

On April 25, 2011, agency attorney for USPS, Alfred J. Zwettler, forwarded a letter to Defendant in which he explained that Defendant was obligated to close on the conveyance as the purchase option in the lease had been executed and that the title company had forwarded the closing papers and tendered a check to Defendant's counsel (Docket No. 22, Attachment 4; 22-8, § 9; Attachment 9, § 3).

On May 6, 2011, Mr. Hubert forwarded the closing documents and a check for the purchase price and prorated rent through May 31, 2011 (Docket No. 22, Attachment 7, § 13). On the same

4

date, Defendant's bookkeeper wrote to Plaintiff, advising that as a holdover tenant, Plaintiff was responsible for an undetermined amount of rent pending resolution of the issues with the deed and legal description (Docket No. 22, Attachment 5).

Plaintiff filed a Complaint for specific performance on September 6, 2011 (Docket No. 1). Plaintiff moved for summary judgment claiming that it appropriately exercised a purchase option provision contained in the lease and therefore is entitled to purchase fee simple title to the property (Docket No. 22).  Defendant, too, moved for summary judgment claiming that Plaintiff failed to appropriately exercise the purchase option (Docket No. 23).

### CROSS-MOTIONS FOR SUMMARY JUDGMENT STANDARD OF REVIEW

The standard of review for cross-motions for summary judgment does not differ from the standard when one party files such a motion.  *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009) (*citing Taft Broadcasting Company v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  "[T]hat both parties have moved for summary judgment does not mean that the court must grant summary judgment as a matter of law for one side or the other."  *Id.* (*citing Morr v. Kamco Industry, Incorporated*, 548 F. Supp.2d 472, 477 (N. D. Ohio 2008)).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* (*citing Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552 (1986)).  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* (*citing Celotex Corporation*, 106 S. Ct. at 2552).  The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* (*citing Anderson v. Liberty Lobby, Incorporated*, 106 S.Ct. 2505, 2511 (1986) (*quoting*

FED.R.CIV.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  *Id.*  It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Id. (citing Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 106 S.Ct. 1348, 1355-1356 (1986)).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position.  *Id.* (*citing Celotex, supra*, 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor.  *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)).  Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.  *Id.* (*citing Celotex, supra*, 106 S. Ct. at 2552).

### DISCUSSION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

#### THE ISSUES

Plaintiff fulfilled the base term for the lease of the post office property and exercised its ten-year renewal option and thereafter opted to renew for two, five-year terms.  Defendant does not suggest that the renewal options were not properly exercised.

Plaintiff's authorized contracting agent forwarded written correspondence to Defendant asserting its intent to comply with the terms of the lease purchase option over one year prior to the

termination of the lease. Plaintiff contends that Defendant breached the contract by failing to complete the closing. Defendant considers that Plaintiff a holdover tenant since the purchase of the property was not completed by April 6, 2011, the date the parties mutually agreed to terminate the lease. Plaintiff seeks an order requiring Defendant to cooperate with the closing and effectuate a legal surrender of all right, title and interest in the Carey Ohio Post Office property. Defendant seeks an order assessing unpaid rent for breach of the lease and relieving him of any further obligation to perform the conveyance.

### THE APPLICABLE LAW

The obligations to and rights of the United States under its contracts are governed exclusively by federal law. *Boyle v. United Technology Corporation*, 108 S. Ct. 2510, 2514 (1988) (*See, e.g.*, *United States v. Little Lake Misere Land Company*, 93 S. Ct. 2389, 2396-2397 (1973); *Priebe & Sons, Incorporated v. United States*, 68 S. Ct. 123, 125 (1947); *National Metropolitan Bank v. United States*, 65 S. Ct. 354, 355 (1945); *Clearfield Trust v. United States,* 63 S. Ct. 573, 574-575 (1943)). A case arising under federal common law presents a federal question and as such is within the original subject matter jurisdiction of the federal courts. *National Farmers Union Insurance Companies v. Crow Tribe of Indians,* 105 S. Ct. 2447, 2450-2451 (1985).

'In contract interpretation, the plain and unambiguous meaning of a written agreement controls.' *Arko Executive Services v. United States*, 553 F. 3d 1375, 1379 (Fed. Cir. 2009). The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract." *Id.* (*citing Hercules Incorporated v. United States*, 292 F.3d 1378, 1380–1381 (Fed. Cir. 2002) (*quoting Craft Machine Works, Incorporated v. United* States, 926 F.2d 1110, 1113 (Fed. Cir. 1991)). To exercise an option to the contract validly, the government must exercise the option in exact accord with the terms of the contract. *Id.* (*citing Freightliner Corporation v.*

*Caldera*, 225 F.3d 1361, 1366 (Fed. Cir.2000)).

A party breaches a contract if he or she fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions. *Savedoff v. Access Group, Incorporated*, 524 F.3d 754, 763-764 (6th Cir. 2008) (*citing Jarupan v. Hanna*, 173 Ohio App. 3d 284, 293, 878 N.E.2d 66, 73 (2007)). To establish the elements of a breach of contract claim under federal law, "a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Red Lake Band of Chippewa Indians v. United States Department of Interior*, 624 F. Supp.2d 1, 12 (D. D. C. 2009) (*citing Pryor v. United States,* 85 Fed. Cl. 97, 104 (Fed. Cl. 2008) ("*quoting San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)); *see also Mauras v. United States*, 82 Fed. Cl. 295, 299 (Fed. Cl. 2008) (same); *Spectrum Sciences v. United States*, 84 Fed. Cl. 716, 735 (Fed. Cl. 2008) (same)"). Thus, a plaintiff must establish that he or she suffered a loss or injury (often phrased as "damages") as part of a claim for a breach of contract. *Id.* (*See Malissa Company, Incorporated v. United States*, 18 Cl. Ct. 672, 674 (Cl. Ct. 1989)).

The implied duty to cooperate is encompassed within the duty of good faith and fair dealing implied in every government contract. *Renda Marine, Incorporated v. United States,* 71 Fed. Cl. 378, 387 (Fed. Cl. 2006) (*See Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988) (citations omitted). This implied duty is binding upon both parties in the same manner as if it were an express provision in the contract. *H. N. Wood Products v. United States,* 59 Fed. Cl. 479, 486 (2003) (*citing Precision* Pine & Timber, 50 Fed. Cl. 35, at 54 (2001)).

In fact, there is an implied provision of every contract, whether it be one between individuals or between an individual and the government, that neither party to the contract will do anything to prevent performance thereof by the other party or that will hinder or delay him or her its

8

performance. *Manuel Brothers, Incorporated, v. United States*, 55 Fed. Cl. 8, 38 (Fed. Cl. 2002) (*citing Lewis-Nicholson, Incorporated v. United States,* 213 Ct. Cl. 192, 204, 550 F.2d 26, 32 (1977) (citations omitted)). The government has an obligation to carry out its contractual duties within a reasonable time. *Essex Elctro Engineers Incorporated v. Danzig*, 224 F. 3d 1283, 1291 (Fed. Cir. 2000) (*citing J. D. Hedin Construction Company v. United States*, 171 Ct. Cl. 70, 347 F. 2d 235, 253 (1965)). The government must avoid actions that unreasonably cause delay or hindrance of the contract performance. *C. Sanchez & Son, Incorporated v. United States,* 6 F. 3d 1539, 1542 (Fed. Cir. 1993).

### APPLICATION OF THE LAW TO THE FACTS IN THIS CASE

Defendant manifested his assent to the terms of the contract and rider by accepting an assignment of the contract from the Houston Post Office Partnership. Defendant does not argue that the parties failed to meet the black-letter requirements of forming a contract. Neither does he protest the origin or scope of the contract. The contract was prepared by the Government and the plain intent of the parties was to create binding obligations for the rental and/or purchase of the Carey Ohio Post Office. The plain language within the four corners of the contract and rider determines that the mutual intent of the contracting parties is clear and unambiguous as to its essential terms and the procedure for exercising an option to purchase. Moreover, the conduct of the parties suggests that a valid contract exists as a matter of tacit understanding.

A reasonable performance of Plaintiff's obligation entailed exercising its prerogative to purchase the Carey Ohio Post Office after the expiration of the thirty-year lease and during the lease renewal periods. Firmly rooted in the contract and rider were provisions for notice of the government's intent to purchase the Carey Ohio Post Office within a year of the expiration of the lease agreement. Plaintiff complied with its obligation arising from the contract that required the

government's authorized contracting agent to send Defendant notice of intent to exercise its purchase option.  The contract does not contain language that would impose an unqualified duty on Plaintiff for completion of the sale within a specific time or on Defendant to cooperate with the sale.

Within the nature and scope of the Government contract in this case, there was an underlying expectation that Defendant would cooperate with his closing and acquisition of the Carey Ohio Post Office.  In practical terms, this means that once the Government timely performed under the contract, Defendant was obligated to refrain from hindering the Government's performance under the contract.  To the extent that Defendant refused to execute the closing documents or accept the check for the designated purchase price, he breached an implicit promise to perform under the contract and rider.

## THE ISSUE

Plaintiff focuses on the remedy for Defendant's breach of good faith and fair dealing with the Government, arguing that the only remedy available is specific performance of the terms implicit in the agreement.

## THE APPLICABLE LAW

Specific performance is an equitable remedy and is "only available where there is no adequate remedy at law." *International Fidelity Insurance Company v. Vimas Painting Company, Incorporated*, 2009 WL 2243769, *9 (S. D. Ohio 2009) (*citing Gleason v. Gleason*, 64 Ohio App.3d 667, 672, 582 N.E.2d 657, 661 (1991)).  Where the claim involves the purchase of real property, Ohio law recognizes that "specific performance may be had as a matter of right, because there is nothing else in the world exactly equivalent to conveyance of the particular piece of real estate contracted for." *Orion Care Services, LLC v. 138 Michael, Limited*, 2010 WL 1980979, *4 (S. D.

10

Ohio 2010) (*citing Link v. Burke*, 5 Ohio Law Abs. 676, 677 (1926)).  However, a "party seeking specific performance ... must show performance on his own part pursuant to the terms of the contract."  *Id.* (*citing White v. Nemastil*, 29 Ohio App.3d 1, 503 N. E.2d 189 (1985), (*citing George Wiedemann Brewing Company v. Maxwell*, 78 Ohio St. 54, 84 N. E. 595 (1908)).

## APPLICATION OF THE LAW TO THE FACTS IN THIS CASE.

Plaintiff has established performance pursuant to the terms of the contract.  Plaintiff has also demonstrated that the value of the Carey Ohio Post Office and the real property on which it is located are of such a special nature that their values cannot be translated into quantitative terms.  The perceived uniqueness of the Carey Ohio Post Office and the land on which it sits suggests that there is no substitute or other representative parcel of land that would be adequate to the Government without considerable payment of compensatory damages.  Compensatory damages emanating from the breach, however, are clearly unascertainable and would be speculative.  It would likely be difficult to collect an extensive award of damages from Defendant if damages were ever awarded.

The Magistrate finds that there is substantial merit in Plaintiff's contention that specific performance of the contract concerning the sale of real estate, here the Carey Ohio Post Office, is a preferred course of action as opposed to an action for damages emanating from the breach.  There is substantial merit to Plaintiff's demand for specific performance.  Consequently, the Magistrate recommends that the Court order Defendant to complete the closing and transfer all right, title and interest he has in the property to Plaintiff within 30 days after the filing of this Report and Recommendation.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### THE ISSUE.

Defendant claims that his performance under the contract and attendant rider is excused since

11

Plaintiff failed to comply with the condition precedent that required the purchase of the property to be completed by April 6, 2011.  Once Plaintiff failed to settle the purchase of the property, its ability to purchase the property was extinguished and the purchase lease agreement was no longer enforceable.

**THE APPLICABLE LAW.**

A contract is breached when one party fails or refuses to perform its duties under the contract.

*Micrel, Incorporated v. TRW, Incorporated*, 486 F.3d 866, 879 (6th Cir. 2007).  A party is in material breach of contract when it violates a term essential to the purpose of the contract.  *Id.*  A material breach by one party excuses the other party from performing its remaining obligations under the agreement.  *Id.*  Mere nominal, trifling, slight or technical departures from the contract terms are not material breaches so long as they occur in good faith.  *Id.*

Good faith means honesty in fact in the conduct or transaction.  *Id.*  As part of a contract, parties may agree to a condition, which is to occur before performance under a contract becomes due.  *Id.*  This is called a condition precedent.  *Id.*  However, no party can insist upon a condition precedent when the nonperformance of the condition has been caused by that party.  *Id.*  Where a party's conduct prevents the occurrence of a condition, that party cannot avail itself of that conduct to avoid liability to the other party to the contract.  *Id.*  One cannot avoid liability by preventing the performance of a condition precedent.  *Id.*

A failure to satisfy a condition precedent excuses performance under a contract, or, alternatively put, renders a contract unenforceable, but does not affect the validity of the contract.  *Baumgardner v. Bimbo Food Bakeries Distribution, Incorporated*, 697 F. Supp.2d 801, 808 (N. D.

12

Ohio 2010) (*See* RESTATEMENT (SECOND) OF CONTRACTS § 224) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.").  However, under the doctrine of prevention, where a party to a contract is the cause of the failure of the performance of the obligation due him or her, that party cannot in any way take advantage of that failure." *Park Properties Associates, L.P. v. United States*,  82 Fed. Cl. 162, 171 (Fed. Cl. 2008) (*see also* RESTATEMENT (SECOND) OF CONTRACTS § 245 ("Where a party's breach by non-performance contributes materially to the nonoccurrence of a condition of one of his duties, the non-occurrence is excused.")).

### APPLICATION OF THE LAW TO THE FACTS IN THIS CASE.

The Magistrate finds that there is a manifest disconnect between the condition precedent requirements and Defendant's interpretation of them.  Here, neither the contract nor the rider suggests that his duty to perform under the contract is obviated by implicit expectation that the closing must transpire before the expiration of the lease and riders.  There is no explicit condition precedent or an express stipulation that the settlement must precede the expiration of the contract. The implicit language of the notice of election was that once Plaintiff exercised its right to purchase, the parties would exchange documents and conduct the actual closing within a reasonable time thereafter.

After Plaintiff satisfied the condition precedent, Defendant's obligations to cooperate and perform were triggered.  Defendant's conduct made it impossible for Plaintiff to comply with the terms of the contract prior to their expiration.  Once Mr. Hubert ascertained that Defendant would be conducting the closing through the mail, he modified the closing documents and forwarded them along with a check for rent accruing in April 2011, to Defendant's counsel.  Counsel did not

13

represent Defendant at the closing, so Mr. Hubert forwarded the documents directly to Defendant. Mr. Huber reminded Defendant April 25, 2011, of his obligation to cooperate with the closing. On May 6, 2011, the closing documents accompanied by a check for the rent accruing through May 31, 2011 were again forwarded directly to Defendant. Presuming that his obligation under the contract was excused as of April 6, 2011, Defendant, by and through his bookkeeper, advised Plaintiff on May 6, 2011, that it was responsible for rent in an amount to be determined.

The Magistrate concludes that the contract and rider were enforceable to the extent that the condition precedent to the valid contract and rider was performed. Once Plaintiff complied with the condition precedent, Defendant had an obligation to perform. Equity will not permit Defendant to take unfair advantage of the performance obligation due him and unjustly prevent the performance. Although the lease agreement has by its own terms expired, the parties are not relieved from their respective contractual obligations not yet satisfied. Defendant's failure to perform under the contract and rider is not excused.

### THE ISSUE.

Defendant argues that Plaintiff is liable as a holdover tenant from April 6, 2011 to present, at a base rate to be determined at market rates.

### THE APPLICABLE LAW.

"A holdover generally is 'based upon an implied agreement, and indicates on the part of the tenant that he intends to continue the relationship.' *The Strip Delaware, L.L.C. v. Landry's Restaurants, Incorporated*, 2009 WL 1067077, *2 (2009) (*citing Palevsky v. Bentfield*, 46 Ohio App. 385, 387, 188 N. E. 660 (1933)). In general terms, a holdover occurs when a tenant maintains possession or occupancy of the premises past the expiration date of the lease agreement. *Id.* (*See*

14

*Bumiller v. Walker,* 95 Ohio St. 344, 116 N. E. 797 (1917); *Steiner v. Minkowski*, 72 Ohio App.3d 754, 762, 596 N.E.2d 492 (1991); *Inzetta v. The Ohio Bell Telephone Company*, Frank. App. Nos. 00AP-1084, *2 (2001)).

### APPLICATION OF THE LAW TO THE FACTS IN THIS CASE.

The Magistrate finds that Plaintiff is not classified as a holdover tenant as defined by case law or described under the terms of the lease agreement. Plaintiff did not intend to be a party to a holdover tenancy having exercised the right to purchase prior to the beginning of the holdover period. Plaintiff intended to own the premises prior to the expiration of the lease or within a short time thereafter. In fact, Mr. Hubert planned to complete the closing by mail prior to April 6, 2011. Having made corrections to the deed, Plaintiff forwarded the closing documents, a check for the purchase price and a check for the pro-rated rent for the first six days of April 2011 to the attorney who returned the package five days later with advice that he was not engaged to conduct the closing. Finally, on May 6, 2011, the closing papers and rent prorated for six days in April 2011 and the entire month of May 2011 were sent to Defendant. Since Plaintiff fulfilled the obligation to purchase prior to the expiration of the lease, Plaintiff's continued occupancy after May 31, 2011, cannot be deemed an usual, improper holdover subject to a forcible entry and detainer action, new lease terms, restitution or accrued but unpaid rent.

### CONCLUSION.

For these reasons, the undersigned Magistrate Judge recommends that the Court:

1.  Grant Plaintiff's Motion for Summary Judgment and order Defendant to complete the closing and transfer all right, title and interest he has in the Carey Ohio Post Office property to Plaintiff within 30 days after the filing of this Report and Recommendation;

2.  Deny Defendant's Motion for Summary Judgment; and

3.      Terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
Vernelis K. Armstrong
United States Magistrate Judge

Date:   June 20, 2012

**NOTICE.**

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

16

17